IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NORBERT A. SCHUELLER,

        Plaintiff,

vs.                                        Civ. No. 04-0616 MV/WDS

DIANA MARTINEZ-COPLEN, as
TREASURER OF VALENCIA COUNTY,
STATE OF NEW MEXICO; and
VALENCIA COUNTY,

        Defendants.

## MEMORANDUM OPINION AND ORDER

      This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment,
filed July 13, 2004, **[Doc. No. 6],** and Defendants' Motion for Summary Judgment, filed
July 30, 2004, **[Doc. No. 11]**.  The Court, having considered the motions, briefs, relevant law, and
being otherwise fully informed, finds that Plaintiff's Motion for Partial Summary Judgment is not
well-taken and will be **DENIED** and Defendants' Motion for Summary Judgment is well-taken
and will be **GRANTED**.

## BACKGROUND

      This lawsuit arises out of a dispute over delinquent real property taxes owed by Plaintiff.
In August 2002, Plaintiff purchased property located at 03 Campanada Drive, Belen, New Mexico
("the Property").  A warranty deed conveying the Property from Altegra Credit Company to
Plaintiff was recorded at the County Clerk's office, County of Valencia ("County"), on September
23, 2002.  This change in ownership occurred after the Valencia County Assessor had compiled

the property tax schedule for the County Treasurer to use in preparing the 2002 tax bills.[1]

Consequently, the 2002 property tax bill for the Property, which was mailed on or about

November 1, 2002, was sent to Altegra Credit Company, the property owner of record at the time

the property tax schedule was prepared, and not to Plaintiff.

In November, Plaintiff made two phone calls to the Assessor's Office, inquiring about

whether any taxes were due on the Property and when the tax bill would be sent.  During the first

call, Plaintiff was told that the tax bills had gone out but that his name was not found as an owner

of property.  During the second call, Plaintiff's name was found as the owner of the Property but

Plaintiff was told that no taxes were due but that he should check back in December.  In

December, Plaintiff made three phone calls to the County regarding his property taxes.  All three

times he was told that no property taxes were due.  Plaintiff made one additional call in early

January, and was told, once again, that no property taxes were due.

When the 2002 property taxes due on the Property were not paid within thirty days of the

date the taxes were due, interest and penalties were assessed in accordance with applicable law.

When Plaintiff received his 2003 tax bill, it indicated that the 2002 property taxes (including

interest and penalties) were still outstanding.  Plaintiff wrote a letter to the County Assessor and

the County Treasurer regarding the fact that he believed the taxes had been paid by the seller

---

[1]  The relevant statutes provide that "no later than October 1 of each tax year, the county assessor shall prepare a property tax schedule for all property subject to property taxation in the county.  NMSA 1978, § 7-38-35.  A copy of the property tax schedule prepared by the assessor shall be delivered to the county treasurer on October 1 of each tax year.  *Id.* at § 7-38-36.  Upon receipt of the property tax schedule, the county treasurer shall prepare and mail property tax bills to either the owner of the property or any person other than the owner to whom the tax bill is to be sent. *Id.*  Tax bills shall be mailed no later than November 1 of each tax year.  *Id.*  The validity of the tax, the time at which the tax is payable or any subsequent proceeding instituted for the collection of the tax is not affected by the failure of a person to receive his tax bill.  *Id.*

when Plaintiff purchased the Property, that the County had repeatedly told Plaintiff that he did not

owe any taxes, and that Plaintiff had never received a tax bill.  Plaintiff indicated that he would

pay the 2002 taxes but that, under the circumstances, he did not feel he should have to pay the

penalties and interest.  The County Treasurer referred Plaintiff to the title company he used when

purchasing the Property.

Plaintiff subsequently attempted to pay his 2003 property taxes but his check was returned

by the County because his 2002 property taxes were still outstanding.  Plaintiff filed a Complaint

alleging that Defendants' method of assessing and collecting property taxes, which resulted in

Plaintiff not receiving a 2002 property tax bill prior to the time interest and penalties were

assessed, violates the due process requirements of the Fifth and Fourteenth Amendments to the

Constitution.  Plaintiff asserts a civil rights claim under § 1983 (Count III), an intentional infliction

of emotional distress claim (Count IV), and seeks declaratory and injunctive relief (Counts I and

II).

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287,

1290 (10th Cir. 1999).  Under Rule 56(c), "the mere existence of *some* alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law will properly

3

preclude the entry of summary judgment." *Id.* at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine

issue of material fact.  *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.

1993).  There is no requirement that the moving party negate the nonmovant's claim.  *See Celotex*

*Corp. v. Catrett,*  477 U.S. 317, 325 (1986).  Once the moving party meets its burden, the

nonmoving party must show that genuine issues remain for trial "as to those dispositive matters

for which it carries the burden of proof."  *Applied Genetics Int'l Inc. v. First Affiliated Secs.,*

*Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted).  Rather than "merely show there is

some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond

the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file,

designate specific facts showing there is a genuine issue for trial."  *Kaus v. Standard Ins. Co.*, 985

F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).  There is no issue for

trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict

for that party.  *See Anderson*, 477 U.S. at 248.   Upon a motion for summary judgment, the Court

"must view the facts in the light most favorable to the nonmovant and allow the nonmovant the

benefit of all reasonable inferences to be drawn from the evidence."  *Kaus*, 985 F. Supp at 1281.

## **DISCUSSION**

Defendants urge the Court to dismiss this action under the Tax Injunction Act,

28 U.S.C. § 1341, and the principle of comity.

4

A.      Tax Injunction Act

The Tax Injunction Act (the "Act") provides that the "district courts shall not enjoin,

suspend or restrain the assessment, levy or collection of any tax under State law where a plain,

speedy and efficient remedy may be had in the courts of such State."   28 U.S.C. § 1341.  The Act

imposes a "broad limitation on federal court interference with state collection of taxes [and] is not

limited to injunctive relief.  The Tax Injunction Act bars declaratory relief, and suits for damages

as well."  *Brooks v. Nance*, 801 F.2d 1237, 1239 (10th Cir. 1986) (internal citations omitted).

While the Act makes no mention of local taxes, it has long been established that it applies to local

taxes as well as state taxes.  *See Collins Holding Corp. v. Jasper County, S.C.*, 123 F.3d 797, 799

n. 2 (4th Cir. 1997).

"The purposes of the Act are 'to promote comity and to afford states the broadest

independence, consistent with the federal constitution, in the administration of their affairs,

particularly revenue raising.'" *Marcus v. Kansas Dept. of Revenue*, 170 F.3d 1305, 1309 (10th

Cir. 1999) (quoting *Wright v. McClain*, 835 F.2d 143, 144 (6th Cir. 1987)).  Thus, the Tax

Injunction Act "operates to divest the federal courts of subject matter jurisdiction over claims

challenging state taxation procedures where the state courts provide a plain, speedy and efficient

remedy."  *Id*. (quoting *Lussier v. Florida, Dep't of Highway Safety & Motor Vehicles*,

972 F.Supp. 1412, 1417 (M.D.Fla 1997)).  The "plan, speedy and efficient" exception must be

construed narrowly.  *California v. Grace Brethren Church*, 457 U.S. 393, 413 (1982) (in order to

be faithful to the congressional intent "to limit drastically" federal-court interference with state tax

systems, courts must construe narrowly the "plain, speedy and efficient" exception to the Tax

Injunction Act).  Accordingly, the Supreme Court has ruled that the "plain, speedy and efficient

remedy" exception to the Act is to be given a purely procedural interpretation.  *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 512 (1981).  "A state remedy is adequate if it meets certain minimal procedural criteria, which include an opportunity to raise the desired legal objections with the eventual possibility of Supreme Court review of that claim."  *Brooks*, 801 F.2d at 1240 (quoting *Carrier Corp. v. Perez*, 677 F.2d 162, 165-66 (1st Cir. 1982)).

Plaintiff's Complaint must be dismissed pursuant to § 1341 if an adequate state remedy exists.  The Court therefore must determine whether the remedies available to Plaintiff under New Mexico law are plain, speedy and efficient.   To fall within the protection of the Tax Injunction Act, the state need only provide an opportunity for a full hearing and judicial determination in which the taxpayer may raise constitutional claims.  *Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 433 (2d Cir. 1989).  The opportunity need not be the best or most convenient one, *Behe v. Chester County Bd. of Assessment Appeals*, 952 F.2d 66, 68 (3d Cir. 1991), and the taxpayer's failure to take advantage of the available state procedures does not mean that the state remedy is insufficient.  *Burris v. City of Little Rock*, 941 F.2d 717, 721 n. 4 (8th Cir. 1991).

According to Defendants, Plaintiff could have paid the disputed tax, with penalties and interest, and then brought a suit to recover the penalties and interest under § 7-38-40 of the Property Tax Code.  If the state legislature has provided a taxpayer with a way to pay a challenged tax and subsequently maintain a suit to recover the challenged tax, a federal court should leave undisturbed the state's administration of its taxes.  *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300-301 (1943).  Section  7-38-40 provides that:

Claims for refund shall be filed by the property owner as a civil action in the

6

district court for the county in which the valuation was determined if the property was locally valued or in the district court for Santa Fe county if valued by the division.   . . . The property owner, the county or the director may appeal to the court of appeals from any final decision or order of the district court in a claim for refund case in which they are parties.

NMSA 1978, § 7-38-40.

Plaintiff contends that the refund provision was not available to him because he does not satisfy the requirements of § 7-38-39, which provides that:

After receiving his property tax bill and after making payment prior to the delinquency date of all property taxes due in accordance with the bill, a property owner may protest the value or classification determined for his property for property taxation purposes, the allocation of value of his property to a particular governmental unit, the application to his property of an administrative fee adopted pursuant to Section 7-38-36.1 NMSA 1978 or a denial of a claim for an exemption by filing a claim for refund in the district court.

NMSA 1978, § 7-38-39.

Defendants contend that the two provisions operate separately and that the refund provision, on its face, is not limited to the circumstances set forth in § 7-38-39.  Defendants provide no support for their contention that the refund provision is available to a taxpayer, like Plaintiff, who is seeking a refund of interest and penalties due to failure to pay taxes prior to the delinquency date.  A reading of the Property Tax Code as a whole supports the position that § 7-38-40 is not available for a refund of penalties and interest.  In each provision of the Property Tax Code related to refunds, the Property Tax Code limits refunds to the situations provided in § 7-38-39.  *See* NMSA 1978, § 7-38-41 (providing that refunds will be paid "[i]f a property owner's property taxes are reduced as a result of a decrease in value of the property taxed, a change in the classification, a change in the allocation of the value of the property to a particular governmental unit or granting of a claim for an exemption ordered by a court after a claim for

7

refund, the portion of the property taxes in controversy found to be in excess of the amount

legally due and paid shall be refunded by the county treasurer to the property owner"); *Id.* at § 7-

38-77 (taxes due can only be changed "as a result of a protest, including a claim for refund, in

accordance with the Property Tax Code, of values, classification, allocations of values determined

for property taxation purposes or a denial of a claim for an exemption").

  The Property Tax Code does not appear to provide a procedure for the refund of penalties

and interest improperly assessed.  A state remedy is not plain within the meaning of the Tax

Injunction Act if there is "uncertainty regarding its availability or effect."  *Ashton v. Cory*, 780

F.2d 816, 819 (9th Cir. 1986) (citing *Township of Hillsborough v. Cromwell*, 326 U.S. 620,

625-26 (1946) (where there was such uncertainty surrounding the ability of New Jersey law to

afford full protection to taxpayer's federal rights as to render the state remedy speculative, the

district court properly retained jurisdiction over the case)).  Accordingly, the Court cannot find

that § 7-38-40 provides a plain, speedy and efficient remedy to Plaintiff.

  There are, however, other state remedies available to Plaintiff.  In the absence of a

statutory refund procedure, Plaintiff could have paid the penalties and interest and then sought a

refund from the state district court.  *See Lovelace Center for the Health Sciences v. Beach*,

606 P.2d 203 (N.M. Ct. App. 1980) (holding that in the absence of a statutory procedure for a

refund of property taxes involuntarily paid on erroneously assessed property, a district court could

order the refund of the taxes paid).  Furthermore, New Mexico state courts "may entertain

injunctive suits against the collection of state taxes if extraordinary circumstances bring the

grievant within some acknowledged foundation of equity jurisprudence." *Horn v. O'Cheskey,* 378

F.Supp. 1280, 1286 (D.N.M. 1974) (finding that equitable relief was available in New Mexico

state courts to a plaintiff who challenged the methodology by which a tax was collected because the legislature had not supplied the taxpayer with a plain, speedy, and adequate remedy at law). "The existence of this remedy alone irrefutably demonstrates that the state remedies open to plaintiff are plain, speedy, and efficient and deprives the [federal court] of jurisdiction under Section 1341." *Id.* at 1286.

In addition, Plaintiff could seek relief in state court under New Mexico's Declaratory Judgment Act, NMSA 1978, § 44-6-1 *et seq.* ("the state of New Mexico, or any official thereof, may be sued and declaratory judgment entered when the rights, status or other legal relations of the parties call for a construction of the constitution of the state of New Mexico, the constitution of the United States or any of the laws of the state of New Mexico or the United States, or any statute thereof").

Another remedy available to Plaintiff is a state court action under 42 U.S.C. § 1983. State courts have concurrent jurisdiction of claims involving federal constitutional rights. "The courts of New Mexico fully respect this principle and will entertain claims predicated upon the denial of a federal right under § 1983 when presented." *Horn,* 378 F.Supp. at 1287 (*citing Gomez v. Board of Ed. of Dulce Ind. Sch. Dist. No. 21*, 516 P.2d 679 (N.M. 1973)). "That case demonstrates that the state courts will unhesitatingly apply the federal statute and give due consideration to plaintiff's constitutional claims against the New Mexico tax statute in question here." *Id.* at 1287.

Having scrutinized the relevant state remedies available to Plaintiff, the Court is convinced that Plaintiff has a plain, speedy and efficient remedy in the state courts. Therefore, the Court lacks jurisdiction to entertain Plaintiff's challenge to the taxation scheme under the Tax Injunction Act.

B.        Principle of Comity

The principle of comity provides an additional basis for concluding that this court lacks

subject matter jurisdiction in this action.  The Supreme Court has explained that "even where the

Tax Injunction Act would not bar federal-court interference in state administration, principles of

federal equity may nevertheless counsel the withholding of relief."  *Rosewell*, 450 U.S. at 525-26

n.33.  In *Fair Assessment in Real Estate Assoc., Inc. v. McNary*, 454 U.S. 100 (1981), the

Supreme Court held that the principle of comity bars federal courts from granting injunctive as

well as declaratory relief in state tax cases.  In holding that taxpayers are barred by the principle of

comity from asserting § 1983 actions against the validity of state tax systems in federal courts, the

Court stated:

> The recovery of damages under the Civil Rights Act first requires a "declaration"
> or determination of the unconstitutionality of a state tax scheme that would halt its
> operation. And damages actions, no less than actions for an injunction, would hale
> state officers into federal court every time a taxpayer alleged the requisite elements
> of a § 1983 claim. We consider such interference to be contrary to "[t]he
> scrupulous regard for the rightful independence of state governments which should
> at all times actuate the federal courts."

*Fair Assessmen*t, 454 U.S. at 115-16 (internal citations omitted).  State taxpayers "must seek

protection of their federal rights by state remedies, provided of course that those remedies are

plain, adequate, and complete."  *Id.* at 116.  This test is functionally identical to the "plain, speedy

and efficient remedy" required under the Tax Injunction Act.  *Id.* at n.8 ("We discern no

significant difference, for purposes of the principles recognized in this case, between remedies

which are 'plain, adequate, and complete,' as that phrase has been used in articulating the doctrine

of equitable restraint, and those which are 'plain, speedy and efficient,' within the meaning of §

1341.").  Therefore, for the same reasons discussed above, the Court finds that Plaintiff has a

"plain, adequate, and complete" remedy in state court and his challenge to the County's property

tax system is barred in this Court by the principle of comity.

      C.      Intentional Infliction of Emotional Distress

      Plaintiff also alleges an intentional infliction of emotional distress claim under state law.

Since this Court does not have subject matter jurisdiction over Plaintiff's federal claims, his

pendent state claim must also be dismissed for lack of jurisdiction. *United Mine Workers v. Gibbs*,

383 U.S. 715, 725 (1966) (in order for a court to have pendent jurisdiction the "federal claim

must have substance sufficient to confer subject matter jurisdiction on the court.")

## CONCLUSION

      **IT IS THEREFORE ORDERED** that Plaintiff's Motion for Partial Summary

Judgment, filed July 13, 2004, **[Doc. No. 6]**, is hereby **DENIED**.

      **IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment, filed

July 30, 2004, **[Doc. No. 11],** is hereby **GRANTED**.  Plaintiff's Complaint is hereby dismissed

without prejudice for lack of subject matter jurisdiction.

      Dated this 24th day of March, 2005.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE


Attorney for Plaintiff:
      Norbert A. Schueller, *pro se*

Attorneys for Defendant:
      William D. Slease, Esq.